*974
 
 MARION F. EDWARDS, Judge.
 

 [3On appeal is a judgment of the district court granting an Exception of Lack of Procedural Capacity. For the reasons to follow, the appeal is dismissed.
 

 Plaintiffs, Lodge at Sonterra, Ltd.; Ashley House, Ltd.; Cornerstone Ranch, Ltd.; Windsor House, Ltd.; Stone Lake Ltd. (The Class “A” Properties); The Hills, Ltd.; Enfield Courts, Ltd.; Timber Creek, Ltd.; Rain Forest Ltd.; The Trails, Ltd.; Regents Cove Ltd.; Carlyle Crossing Ltd.; Oaks of Ashford, Ltd.; Crescent Oaks, Ltd.; Inwood Oaks, Ltd.; The Belvedere, Ltd.; Red Oak Place, Ltd.; The Chancellor, Ltd.; Oaks of Ashford II, Ltd.; The Falls, Ltd.; Hunt Garden, Ltd.; Willow Tree, Ltd.; Forest Cove Ltd. (The Class “B” Properties); Edwin A. White, on behalf of the putative investors in the Yellowstone Ranch Investment; and Edwin A. White (“White”), individually, filed suit in the Twenty-Fourth Judicial District Court against defendants, The PNC Financial Services Group, Inc. and PNC Bank National Association; Midland Loan Services, Inc. (“Midland”); Michael B. Smuck (“Smuck”); ING Clarion Partners, L.L.C.; and ING |4Clarion Capital, L.L.C. (“ING”). The plaintiffs are Texas domestic limited partnerships which were created to act as borrowers for the purchase of apartment complexes located in Texas. The properties were managed by defendant Smuck through MBS Managerial Services. White and Smuck were co-general partners in MBS and reside in Jefferson Parish.
 

 The petition generally alleges that each plaintiffs structure and management was required and approved by PNC Bank, a part of the PNC Financial Services Group, and that PNC loaned the money to plaintiffs to purchase the apartment complexes. As managing general partner, Smuck executed deeds of trust and promissory notes in favor of PNC, as well as indemnity agreements (the “Loan Documents”). When the Loan Documents were executed, PNC assigned its rights to Midland, a wholly owned subsidiary of PNC. Midland was responsible for servicing the loans and verifying the complexes were run in compliance with the loan documents. The petition further alleged that the complexes deteriorated under Smuck’s management, repairs were not made, rent and insurance proceeds were misappropriated, and the market value of the properties dropped dramatically. It was averred that Midland became aware of the deterioration and improper management, but it did not exercise its rights under the Loan Documents to preserve the properties. Midland also became aware that Smuck was submitting falsified work orders so as to draw on repair reserves but at no time did it inform White of the difficulties. Smuck created false documents to hide the true financial status from White. After becoming aware of these problems, PNC continued to enter into loan agreements and to require White to sign indemnity agreements. It was alleged that PNC and Midland wanted to protect Smuck, one of its largest borrowers. Because the true financial situation was concealed, White and other investors agreed to acquire Yellowstone Ranch apartments with Smuck. The | .^Yellowstone Funds were misappropriated by Smuck. It was urged that ING assumed the duty of Special Servicer over the Stone Lake Apartments after the note on that property was defaulted and that plaintiffs were charged certain legal fees.
 

 According to the petition, White was first made aware of the problems when he was informed that many of the loans were in default. The managing membership of the Class “A” plaintiffs was transferred to him.
 

 A Supplemental and Amending Petition was subsequently filed re-stating the allegations as to the individual defendants.
 
 *975
 
 The defendants filed various answers and defenses. In November 2009, the trial court granted summary judgment in favor of the ING defendants, dismissing plaintiffs’ claims with prejudice.
 

 Also in November 2009, the trial court granted an Exception of Lack of Procedural Capacity filed by the PNC defendants, ordering plaintiffs to file an amended petition affirmatively demonstrating that the partnership plaintiffs appear through a duly authorized partner. They were also ordered to name the individuals identified as the “Yellowstone Ranch Investors” and affirmatively demonstrate White’s authority to bring an action on their behalf.
 

 A Second Supplemental and Amending Petition was filed. PNC filed another Exception of Lack of Procedural Capacity, alleging the second petition failed to comply with the court’s order. Following a hearing, the court partially granted the exception, dismissing the claims of the Class “B” partnerships against PNC without prejudice. The court specifically did not dismiss the claims of the Class “B” partnerships “against any other defendants herein.” Further, the exception was denied as to Lodge at Sonterra, Ltd.; Windsor House, Ltd.; Ashley House, Ltd.; Stone Lake, Ltd.; Cornerstone Ranch, Ltd.; and the “putative investors in the Yellowstone Ranch Investment Partnership,” who were | f,subsequently named in the judgment. It is from this judgment that the Class “B” partnership plaintiffs appeal.
 

 We note a jurisdictional defect. Specifically, the judgment on appeal is a partial summary judgment that is not a final judgment as defined in La. C.C.P. art. 1915. That article, in part, states:
 

 A.A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
 

 (1) Dismisses the suit as to less than all of the parties, defendants, third party plaintiffs, third party defendants, or in-tervenors.
 

 [[Image here]]
 

 B.(1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, recon-ventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
 

 (2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.
 

 The judgment on appeal dismissed the Class “B” partnership claims against the PNC group; the Class “B” action remains against Smuck. Further, the Class “A” partnerships, the Yellowstone Ranch Investment Partnership, and White, individually, still have causes of action against PNC. In addition, the trial court did not designate the judgment as a final judgment and did not make the required express determination, pursuant to La. C.C.P. art. 1915(B)(2), that there is no just reason for delay.
 

 
 *976
 
 17Accordingly, the judgment is an interlocutory judgment not subject to immediate appeal, and we have no jurisdiction over it.
 
 [1]
 
 The correct course of action for appellate review is to file an application for supervisory writ.
 

 Therefore, the present appeal is dismissed. The matter is remanded to the trial court, and appellants are given thirty days from the date of this opinion within which to file an application for a supervisory writ.
 

 APPEAL DISMISSED; REMANDED
 

 [1]
 

 .
 
 See, e.g., Nolan v. High Grass, LLC,
 
 07-80 (La.App. 5 Cir. 5/29/07), 960 So.2d 1103.